## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CALVIN CAINS, JR. , *individually and on behalf of* CALVIN CAINS, III, *deceased.*<br><br>       Plaintiff,<br><br>     v.<br><br>JOSEPH P. LOPINTO, III, *in his official capacity as the Sheriff of Jefferson Parish, Deputy* CLINSTON GADEA, *in his individual and official capacity*, Deputy RICKY FUENTES, *in his individual and official capacity*, Deputy RYAN RIVETTE, *in his individual and official capacity,* Deputy DONALD CLOGHER *in his individual and official capacity*<br><br>       Defendants. | **COMPLAINT**<br>**(Jury Trial**<br>**Demanded)** |

NOW COMES Plaintiff, **CALVIN CAINS, JR.** ("Plaintiff or "Mr. Cains, Jr."), individually and on behalf of **Calvin Cains, III, deceased** (Decedent, or "Mr. Cains III"), by and through undersigned counsel, and brings this Complaint against Defendant Joseph P. Lopinto, Sheriff of the Jefferson Parish Sheriff's Office; and Defendant Clinston Gadea, Defendant Ricky Fuentes, Defendant Ryan Rivette, and Defendant Donald Clogher (the Arresting Defendants).

**PRELIMINARY STATEMENT**

1.

This is a civil rights action brought pursuant to 42 U.S.C. § 1983 and raising supplemental state-law claims concerning the actions of Defendants **JOSEPH LOPINTO, III**, elected Sheriff of Jefferson Parish in his official capacity, for failing to train, failure to screen, failing to have and implement a viable use of force policy, failing to supervise and against certain employees of the Jefferson Parish Sheriff's Office for using excessive force and depriving **CALVIN CAINS, III** of

1

constitutional rights by shooting and killing him.

2.

**DEPUTY CLINSTON GADEA**, individually and in his official capacity, **DEPUTY RICKY FUENTES**, individually and in his official capacity, **DEPUTY RYAN RIVETTE**, individually and in his official capacity, **DEPUTY DONALD CLOGHER**, individually and in his official capacity ("the Arresting Defendants") committed such acts which include but are not limited to: using excessive force by shooting, failing to stop the use of excessive force by other Deputies, condoning the use of excessive force by Deputies, never acting to prevent the use of excess force. At all times, all Defendants acted in concert and conspiracy and were jointly and *in solido* liable.

3.

Defendants were negligent in their acts of participation in the brutal and senseless killing by shooting multiple shots into the body of **CALVIN CAINS III**, due to lack of training, lack of supervision, failure to follow policies and procedures of the defendants as employees of **JOSEPH LOPINTO, III**, Sheriff of the Jefferson Parish Sheriff's Office, who failed to have and implement a viable use of force policy, and failed to uphold the rights entitled to **CALVIN CAINS, III** under the United States Constitution, the Louisiana Constitution and Louisiana state laws.

4.

Thus, this tragedy of the shooting of unarmed civilians in vehicles will continue to occur due to the dangerous custom and practices, defective training, defective use of force policies, defective supervision, defective screening of deputies of the Jefferson Parish Sheriff's office by **JOSEPH LOPINTO, III** elected **SHERIFF** of Jefferson Parish.

5.

The Defendants failed to use the required level of force, namely intermediate force, such as use of a Taser (ECD), pepper spray, baton, or hand holds but used the highest level of deadly

force, shooting **CALVIN CAINS III** when Defendant Deputies knew **Mr. CAINS III** was

unarmed with no weapons and was not known to have committed a violent act which was not a reason

for the stop. **CALVIN CAINS, III** was shot while he was sitting in a car and did not operate his

vehicle, did not move his vehicle, or undertake any action that would place deputies in fear of their

lives. As **CALVIN CAINS, III** sat in his vehicle, he was fatally shot by an excessive number of lethal

rounds.

6.

The actions of the Defendant Deputies in shooting **CALVIN CAINS, III** was known or should

have been known to be excessive force by the Defendant Deputies for which they have no qualified

immunity for each and every lethal round **CALVIN CAINS, III** was shot with resulting in his death.

7.

At all times relevant to this Complaint, all Defendants acted under color of state law. All

Defendants are being sued in their official and/or individual capacities as sheriff's deputies at JPSO

for their unconstitutional actions and/or failure to act.

8.

All Defendants acted under color of law when they used excessive force and/or facilitated the

use of excessive force and deprived Decedent of his Fourth Amendment Right under the United

States Constitution to be free from unreasonable searches and seizures.

9.

All Defendants are being sued in their official and/or individual capacities as sheriff's deputies

at the JPSO for their unconstitutional actions and/or failures to act.

**JURISDICTION**

10.

Petitioner brings this action in this Court pursuant to 28 U.S.C. § 1391(b), as the transactional

events constituting the alleged tortious behavior arose and occurred within the City of Metairie, Parish of Jefferson, State of Louisiana, and in conformity with Fed. Rules Civ. P. Art. 4(d); the cause is further grounded in 28 U.S.C. § 1331 et seq. and 1343(a)(3), 1343(a)(4), and 1367(a) as this suit raises questions of federal civil rights law and is also brought pursuant to 42  U.S.C. § 1983 et seq. and other related provisions. This action is authorized by 42 U.S.C. §1981, et seq., especially §1983, to redress the deprivation under color of law, statute, ordinance, regulation, custom, and/or usage of rights guaranteed the Plaintiffs by the Fourth, Eight, and Fourteenth Amendments to the United States Constitution. Petitioners also seek all relief afforded under state law and including La. Civil Code Article 2315, 2315.1, 2315.2, wrongful death and survival actions. This Court has jurisdiction under 28 U.S.C. Section 1983 and 28 U.S.C. Section 1343. This Court also has jurisdiction under 28 U.S.C. Section 1343.

## **PARTIES**

11.

Plaintiff, **CALVIN CAINS, Jr**., a person of the full age of majority and domiciled in Jefferson Parish. **CALVIN CAINS, Jr**. is the biological father of the deceased, **CALVIN CAINS, III** who was unmarried and without children at the time of his death; therefore CALVIN CAINS, JR. has prudential standing to bring this claim under the laws of the state of Louisiana.

12.

Defendant, **JOSEPH LOPINTO III**, is sued in his official capacity as the Sheriff of Jefferson Parish, an adult citizen of the state of Louisiana and domiciled within the Eastern District of Louisiana. At all times described herein, he was the elected Sheriff of Jefferson Parish at the time of this shooting on June 6, 2023, and was responsible for the hiring, screening, training, supervision, discipline, drafting and implementing policies for the deputies under his command. **JOSEPH LOPINTO, III,** was responsible for all actions of the Jefferson Parish Sheriff's Office (hereinafter referred to as "JPSO").

He was, at all times referred to herein, the person that supervises, operates, manages, directs, and controls the Jefferson Parish Sheriff's deputies whom he employed.

13.

Defendant, **DEPUTY CLINSTON GADEA**, is named herein both individually and in his official capacity as deputy of the JPSO who personally participated in the botched and reckless operation that resulted in the shooting of **CALVIN CAINS, III  DEPUTY GADEA**, along with other JPSO Officers participated in the shooting of decedent, **CALVIN CAINS, III** killing him and depriving him of his Constitutional rights. **DEPUTY GADEA** failed to properly follow police procedures and nationally known standards of law enforcement.

14.

Defendant, **DEPUTY RICKY FUENTES**, is named herein both individually and in his official capacity as deputy of the JPSO who personally participated in the botched and reckless operation that resulted in the shooting of **CALVIN CAINS, III**.  **DEPUTY FUENTES**, along with other JPSO Officers participated in the shooting of decedent, **CALVIN CAINS, III** killing him and depriving him of his Constitutional rights. **DEPUTY RICKY FUENTES** failed to properly follow police procedures and nationally known standards of law enforcement.

15.

Defendant, **DEPUTY RYAN RIVETTE**, is named herein both individually and in his official capacity as deputy of JPSO who personally participated in the botched and reckless operation that resulted in the shooting of **CALVIN CAINS, III**.  **DEPUTY RIVETTE**, along with other JPSO Officers participated in the shooting of decedent, **CALVIN CAINS, III** killing him and depriving him of his Constitutional rights. **DEPUTY RIVETTE** failed to properly follow police procedures and nationally known standards of law enforcement.

16.

Defendant, **DEPUTY DONALD CLOGHER**, is named herein both individually and in his official capacity as deputy of JPSO who personally participated in the botched and reckless operation that resulted in the shooting of **CALVIN CAINS, III**. **DEPUTY CLOGHER**, along with other JPSO Officers participated in the shooting of decedent, **CALVIN CAINS, III** killing him and depriving him of his Constitutional rights. **DEPUTY CLOGHER** failed to properly follow police procedures and nationally known standards of law enforcement.

## STATEMENT OF FACTS

17.

On June 6, 2023, **DEPUTIES GADEA**, **FUENTES, RIVETTE**, and **CLOGHER** along with other unknown JPSO deputies and unknown New Orleans Police Department officers, were on duty while at the residence of Decedent, an apartment complex located at 3301 W. Esplanade Ave, Metairie, LA.

18.

The Defendants were waiting at the decedent's residence to execute an arrest warrant when they watched him exit the apartment, walk to a vehicle and enter it without taking any action.

19.

Decedent **CALVIN CAINS, III** was sitting in the driver's seat of the aforementioned vehicle which was not in motion. Furthermore, the circumstances prevented Mr. Cains III from moving the vehicle. It was blocked from moving forward by JPSO vehicles; and could not move backwards due to the presence of concrete barriers. **CALVIN CAINS, III** posed no immediate threat to deputies or members of the public.

20.

Petitioner alleges that **CALVIN CAINS, III**, was shot to death with multiple gunshot

6

wounds, brutally and without provocation, justification, or probable cause by Defendant Deputies

named as Defendants in this Petition at approximately on June 6, 2023, and further alleges that all

named Defendants conspired amongst themselves and with other agents and employees of the

Jefferson Parish Sheriff's Office to conceal the facts of the killing and to intentionally deceive

Petitioner, **CALVIN CAINS, Jr.**, and the public in an attempt to avoid responsibility and

accountability for their egregious and illegal actions. Defendant, **SHERIFF JOSEPH LOPINTO,**

**III**, has refused to release any deputy video body cams as well as other evidence in the shooting of

**CALVIN CAINS, III**. Petitioner reserves his right to supplement and amend his pleadings after the

additional public records are produced which **SHERIFF JOSEPH LOPINTO, III**, has refused to

produce to date.

21.

To date, **JOSEPH LOPINTO III, SHERIFF** of Jefferson Parish has not amended its

policies and procedures regarding the use of excess force by deputies approaching civilians in

vehicles, despite multiple incidents similar in nature to the one complained of in this petition.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**Violations of the U.S. Constitution**
**(42 U.S.C. § 1983)**

22.

All preceding paragraphs are incorporated as if fully set out herein.

23.

While acting under color of state law, the Defendants deprived Plaintiff of his well- established

right to be free from excessive force, per the authority cited herein.

24.

At all times relevant to this action, Plaintiff asserts Decedent had the clearly established

7

constitutional right not to be subjected to excessive force while being arrested, even if his arrest could have been otherwise proper.

25.

In other words, on June 6, 2023, the Defendants were only permitted to use the amount of force necessary under the circumstances to arrest Decedent.

26.

The Defendants violated Decedent's right to be free from excessive force under the Fourth Amendment to the United States Constitution when they and/or he chose to shoot Decedent when Decedent was merely sitting in a car, made no threats nor violent gestures toward any person, neither brandished nor possessed any weapons, and when no Defendant announced his/her presence nor faced any violent resistance – effectively ambushing Decedent in a hail of lethal rounds.

27.

While acting under color of state law, the Defendants deprived Decedent of his clearly established right to be free from excessive force by shooting him under circumstances in which it was objectively clear that Decedent was merely sitting in a parked car, making no threats nor violent gestures of any kind towards any person, nor posing any threat to any person and he was just sitting in the driver's side of a stationary Toyota automobile.

28.

**DEFENDANT GADEA** used excessive force, in violation of the Fourth Amendment, when he shot and/or otherwise assisted or encouraged the shooting of Decedent while Decedent was unarmed, made no threats nor violent gestures toward any person, and was just sitting in the driver's side of a stationary Toyota automobile.

29.

**DEFENDANT FUENTES** used excessive force, in violation of the Fourth Amendment, when

he shot and/or otherwise assisted or encouraged the shooting of Decedent while Decedent was

unarmed, made no threats nor violent gestures toward any person, and was just sitting in the driver's

side of a stationary Toyota automobile.

30.

**DEFENDANT RIVETTE** used excessive force, in violation of the Fourth Amendment, when

he shot and/or otherwise assisted or encouraged the shooting of Decedent while Decedent was

unarmed, made no threats nor violent gestures toward any person, and was just sitting in the driver's

side of a stationary Toyota automobile.

31.

**DEFENDANT CLOGHER** used excessive force, in violation of the Fourth Amendment,

when he shot and/or otherwise assisted or encouraged and/or approved of the shooting of Decedent

while Decedent was unarmed, made no threats nor violent gestures toward any person, and was just

sitting in the driver's side of a stationary Toyota automobile.

32.

As a consequence of the Arresting Defendants actions or failures to act as aforesaid, Decedent

suffered a violation of his right to be free from excessive force under the Fourth Amendment and was

shot to death, and Plaintiff was damaged as detailed in the Damages section of this Complaint.

**SECOND CLAIM FOR RELIEF**
**Failure to Intervene in Violation of the Fourth Amendment**
**(42 U.S.C. § 1983)**

33.
All preceding paragraphs are incorporated as if fully re-written herein.

34.

Plaintiff asserts a claim pursuant to 42 U.S.C. § 1983 for violation of the right to be free from

excessive force under the Fourth Amendment to the U.S. Constitution, which applies to the actions of

local governments pursuant to the Fourteenth Amendment.

35.

"An officer is liable for failure to intervene when that officer: (1) knew a fellow officer was violating an individual's constitutional rights, (2) was present at the scene of the constitutional violation, (3) had a reasonable opportunity to prevent the harm but nevertheless, (4) chose not to act." *Joseph on behalf of Est. of Joseph v. Bartlett*, 981 F.3d 319, 343 (5th Cir. 2020).

36.

Bystander liability requires more than mere presence in the vicinity of the violation; "we also consider whether an officer 'acquiesced in' the alleged constitutional violation. *Id.*

37.

The Defendants were present at the scene of the constitutional violation that occurred in this case, to wit: they were outside the apartment that Decedent exited as he walked towards a Toyota automobile.

38.

When the first gun shot rang out, the Defendants knew that a fellow officer/deputy had subjected Decedent to unreasonable and excessive force, to wit: they were present when:

a. Decedent had not displayed or brandished any weapon;

b. Decedent made no threatening gestures or remarks towards any person;

c. Decedent did not notice or look at any officer or deputy because each were in their own separate motor vehicles; and

d. Decedent was sitting in a stationary automobile when the shooting started.

39.

The Arresting Defendants had a reasonable opportunity to prevent the shooting of Decedent but

chose not to act.

40.

As a consequence of the Arresting Defendants actions or failures to act as aforesaid, Decedent suffered a violation of his right to be free from excessive force under the Fourth Amendment and was shot to death, and Plaintiff was damaged as detailed in the Damages section of this Complaint.

## FOURTH CLAIM FOR RELIEF
### Assault and Battery

41.

All preceding paragraphs are incorporated as if fully re-written herein.

42.

At all times relevant to this Complaint, the Arresting Defendants committed an assault by placing decedent in reasonable apprehension of a battery with the use of a firearm.

43.

The Arresting Defendants committed a battery by inflicting serious bodily injury upon decedent with dangerous weapons.

44.

The Arresting Defendants committed a homicide either intentionally, or in the sudden heat of blood.

45.

The Arresting Defendants intentionally fired his/her/their firearm(s) multiple times at Decedent, striking his person.

46.

The Arresting Defendants' intentional actions, as aforesaid, were done without the consent of

Decedent and without lawful justification or excuse.

47.

The Arresting Defendants battered Decedent, thereby killing him.

48.

The actions of the Arresting Defendants, as alleged herein, were committed within the course

and scope of their employment with the JPSO.

49.

The actions of the Arresting Defendants, as alleged herein, were intentional, malicious,

willful, wanton, negligent, and/or in reckless disregard of the rights of Decedent.

**FIFTH CLAIM FOR RELIEF**
**Negligent Hiring, Training, and**
**Supervision**

50.

The violations of decedent's rights under the Fourth and Fourteenth Amendments to the

United States Constitution, Plaintiff's damages, and the conduct of the individual Defendants were

directly and proximately caused by the actions and/or inactions of the Defendant Jefferson

Parish Sheriff's Office, through its elected Sheriff **JOSPEH LOPINTO, III** which has tolerated,

ratified, and has been deliberately indifferent to the following policies, patterns, practices, and customs,

and to the need for more or different training, supervision, investigation, and discipline in the areas of:

a. The use of force by police officers;

b. The proper exercise of police powers, including but not limited to the making of an arrest,

engagement with civilians, and the use of force;

c. The monitoring and disciplining of officer misconduct;

d. The failure to identify and take remedial or disciplinary action against police officers who

were the subject of prior civilian or internal complaints of

misconduct;

e. For having a defective internal procedure and internal affairs department which adequately

addressed complaints against its officers in violation of national standards of law enforcement and the

National Association of Chiefs of Police;

f. For improperly requiring a sworn complaint of the victim before taking any action on a

complaint against any deputy of the Jefferson Parish Sheriff's Office;

g. Police officers' use of their status as police officers to employ the use of force;

h. The failure of police officers to follow established policies, procedures, directives, and

instructions regarding arrests, engagement with civilians, and the use of force under such

circumstances as presented by this case, laid out above.

i. Defendant, **JOSEPH LOPINTO, III,**, in his official capacity failed to supervise, failed to

adequately train his officers of the JPSO and has a custom and practice of having deputies approach

citizens and shoot into citizen vehicles without using reasonable lesser levels of force, such as Tasers

(ECDs)and Pepper Spray and other instruments of intermediate force. The JPSO has a custom and

policy that any such incidents and complaints to Internal Affairs Department of JPSO were dismissed

with no action to retrain, revise policies, or discipline the officers involved in police shootings due to

the absence of video footage of the shootings.

j. The failure to have a written, communicated, fully implemented policy that:

    j(1). They should not engage suspects unless there was probable cause to suspect

    criminal activity.

    j(2). Train and have recurrent training of all officers in the above procedures

    above.

    j(3). Fully implement and communicate the above policies of required use of

reasonable force as necessary when approaching citizens in the JPSO Operations

Manual.

j(4). Instead the JPSO has a custom and practice of allowing and encouraging

plainclothes and officers, to use excessive force with no retraining and/or

disciplinary action taken against the deputies.

### 51.

Sheriff Lopinto in his official capacity is liable for the state law violations of his deputies under

the doctrine of *respondeat superior*.

### 52.

As a result of the Arresting Defendants' actions as described above, including the aforesaid

assault and battery of Decedent, Decedent and/or Plaintiff, as father of Calvin Cains, III has been

damaged as stated in the Damages section of this Complaint.

**FIFTH CLAIM FOR RELIEF**
**Survival and Wrongful Death Under 42 U.S.C. § 1983**
**(La. Civ. Code Ann. art. 2315.1 and 2315.2)**

### 53.

All preceding paragraphs are incorporated as if fully re-written herein.

### 54.

Plaintiff is entitled to recover compensatory damages for the wrongful death of Decedent as

alleged herein.

### 55.

At the time of his death, Decedent was survived by Plaintiff, his father, who is a beneficiary of

his estate.

### 56.

At the time of his death, Decedent, was eighteen (18) years old and reasonably expected to live

a full, fruitful, and meaningful life, and to have provided substantial services, protection, and care to the beneficiary of his Estate, as well as security, companionship, guidance, advice, income, and support.

57.

As a result of Decedent's death, Plaintiff, as the surviving father of decedent, has been deprived of his income, services, protection, care, and assistance, together with his society, companionship, comfort, guidance, and advice.

58.

As stated above, the Arresting Defendants and/or Defendant Lopinto used and/or failed to intervene to stop excessive force during Decedent's arrest and/or permitted and/or perpetuated and ratified the use of excessive force and promulgated a culture of excessive force which caused Decedent to suffer the deprivation of his rights under the Fourth Amendment to the United States Constitution and be shot and killed.

59.

Accordingly, Plaintiff, as beneficiary of decedent's estate, is entitled to recover the following damages for Decedent's wrongful death, including but not limited to: expenses for the care, treatment, EMS transportation, and hospitalization incident to the injury resulting in death; compensation for the pain and suffering of Decedent; the funeral and burial expenses of Decedent; the present monetary value of Decedent's reasonably expected net income, the services protection, care and assistance of Decedent, whether voluntary or obligatory; and the society, companionship, comfort, guidance, and advice of Decedent.

60.

Sheriff Lopinto in his official capacity is liable for the state law violations of his deputies under the doctrine of *respondeat superior*.

61.

As a result of the wrongful death of Decedent which was directly and proximately caused by Defendants' actions as described above, Plaintiff, as the father of Calvin Cains, III has been damaged as stated in the Damages section of this Complaint.

62.

As a direct and proximate result of Defendants' actions, as set forth above, Plaintiff and Decedent have been damaged, including but not limited to: Decedent was shot and killed, and endured pain, anguish, and fear before his death, Plaintiff's family was destroyed, and Plaintiff has endured pain, anguish, embarrassment, humiliation, feelings of powerlessness, harm to self-esteem, emotional distress, fear, anxiety, loss of sense of personal safety, dignity, and legal fees and costs.

63.

In addition, Plaintiff avers that he is entitled to wrongful death damages, based upon the loss of consortium and economic loss including, but not limited to, loss of love and affection, guidance, past and future and parental support.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against all Defendants, jointly, severally, and *in solido* for damages including but not limited to:

A.      Compensatory and consequential damages in an amount to be determined by the Court in excess of the Court's jurisdictional amount;

B.      Punitive damages in an amount to be determined at trial, for the willful, reckless, and malicious conduct of Defendants;

C.      Equitable relief, including, without limitation, that Defendants be made to adopt an

16

appropriate policy to prevent future instances of the type of misconduct described herein;

       D.      Attorneys' fees and the costs of this action and other costs that may be associated with this action; and

       E.      Any and all other relief that this Court deems equitable, just and proper.

## JURY DEMAND

       Plaintiff respectfully demands a jury trial on all issues of fact that may arise from the pleadings.

Respectfully submitted:

/s/ *R. Christian Bonin*

_____

R. Christian Bonin
rcb@boninlawfirm.com
Alexandre E.  Bonin
aeb@boninlawfirm.com
Jean-Marc V. Bonin
jmvb@boninlawfirm.com
4224 Canal St.
New Orleans, Louisiana 70119
P: (504)586-0064
F: (504)488-4114
*Attorney for Plaintiff Calvin Cains, Jr.*